**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUBRIL PECOU and ASHLEY SCHIEFER, individually and as representatives of a class of similarly situated persons, and on behalf of the Bessemer Trust Company 401(k) and Profit Sharing Plan, <br><br> Plaintiffs, <br><br> v. <br><br> BESSEMER TRUST COMPANY and PROFIT SHARING PLAN COMMITTEE OF BESSEMER TRUST COMPANY <br><br> Defendants. | Case No. 1:22-cv-01019-MKV <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

I.     THE PLEADINGS AND MOTION TO DISMISS ........................................................2

II.    MEDIATION AND SETTLEMENT ..........................................................................3

III.    OVERVIEW OF SETTLEMENT TERMS ...................................................................3

      A.    The Settlement Class.............................................................................3

      B.    Monetary Relief ...................................................................................4

      C.    Release of Claims ................................................................................4

      D.    Class Notice and Settlement Administration .......................................4

      E.    Attorneys' Fees and Administrative Expenses ....................................5

      F.    Review by Independent Fiduciary .......................................................5

ARGUMENT ………..........................................................................................................6

I.    STANDARD OF REVIEW ......................................................................................6

II.    THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL ...........7

      A.    The Class is Adequately Represented..................................................7

      B.    The Proposed Settlement Was Navigated at Arm's-Length ..................9

      C.    The Settlement Provides Significant Relief to Settlement Class Members That is Fair and Adequate Based on All Relevant Considerations ...................................10

            1.    The Costs, Risks, and Delay of Further Litigation Were Significant ........11

            2.    The Proposed Method of Distributing Relief to the Class is Effective......13

            3.    The Settlement Imposes a Reasonable Limitation on Attorneys' Fees .....14

            4.    No Separate Agreements Bear on the Adequacy of Relief to the Class ....14

      D.    The Settlement Treats Settlement Class Members Equitably................14

III.     THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED............................15

IV.     THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .....................15

     A.     The Proposed Settlement Class Satisfies Rule 23(a) ..............................................16

     B.     The Proposed Class Satisfies Rules 23(b)(1)...........................................................18

          1.     Rule 23(b)(1)(A) .........................................................................................19

          2.     Rule 23(b)(1)(B) .........................................................................................20

CONCLUSION ............................................................................................................................21

## **TABLE OF AUTHORITIES**

### **Cases**

*Abbott v. Lockheed Martin Corp.*,
    2015 WL 4398475 (S.D. Ill. July 17, 2015) ....................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)........................................................................18

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
    2019 WL 2428631 (S.D.N.Y. June 11, 2019) .................................................20

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
    No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020) .............................11

*Brotherston v. Putnam Invs., LLC*,
    No. 1:15-cv-13825-WGY, ECF No. 88 (D. Mass. Dec. 13, 2016)....................20

*Brotherston v. Putnam Invs., LLC*,
    907 F.3d 17 (1st Cir. 2018)........................................................................9

*Cassell v. Vanderbilt Univ.*,
    2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) .............................................20

*Cates v. The Trustees of Columbia Univ. in the City of New York et al*,
    1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018) .................................20

*Cates v. Trustees of Columbia Univ. in City of New York*,
    2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ................................................14

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................7

*Clark v. Duke Univ.*,
    2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ...............................................20

*Clark v. Ecolab Inc.*,
    2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009).................................................6

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).........................................................................16

*Cunningham v. Cornell Univ.*,
    1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019) ...................................................20

*Falberg v. Goldman Sachs Grp., Inc.*,
    2022 WL 538146 (S.D.N.Y. Feb. 14, 2022) ...................................................................20

*Galdi Securities Corp. v. Propp*,
    87 F.R.D. 6 (S.D.N.Y. 1979) ..........................................................................................10

*Gen. Tel. Co. of the S.W. v. Falcon*,
    457 U.S. 147 (1982)..........................................................................................................17

*Henderson v. Emory Univ.*,
    2018 WL 6332343 (N.D. Ga. Sept. 13, 2018) .................................................................20

*Hochstadt v. Boston Scientific Corp.*,
    708 F. Supp. 2d 95 (D. Mass. 2010) ..........................................................................19, 20

*In re Beacon Assocs. Litig.*,
    282 F.R.D. 315 (S.D.N.Y. 2012) ....................................................................................20

*In re Excess Value Ins. Coverage Litig.*,
    2004 WL 1724980, (S.D.N.Y. July 30, 2004) ..................................................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)...............................................................................................17

*In re Glob. Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................................13, 19

*In re GSE Bonds Antitrust Litig.*,
    2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) ..........................................................7, 8, 9

*In re Ikon Office Solutions, Inc.*,
    191 F.R.D. 457 (E.D. Pa. 2000).......................................................................................21

*In re J.P. Morgan Stable Value Fund ERISA Litig.*,
    2017 WL 1273963 (S.D.N.Y. Mar. 31, 2017) ................................................................17

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................16

*In re Michael Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 57 (S.D.N.Y. 1993) ......................................................................................15

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................6

*In re Norte/Networks Corp. ERISA Litig.*,
    2009 WL 3294827 (M.D. Tenn. 2009) ....................................................20

*In re Northrup Grumman Corp. ERISA Litig.*,
    2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) .........................................20

*In re PaineWebber Ltd. Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .....................................................11, 12

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016)......................................................................8

*In re Traffic Exec. Ass'n*,
    627 F.2d 631 (2d Cir. 1980)......................................................................6

*In re Tyco, Int'l, Ltd. Multidistrict Litig.*,
    2006 WL 2349338 (D.N.H. Aug. 15, 2006) ...........................................20

*In re Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................17

*In re Virtus Invest. Partners, Inc. Sec. Litig.*,
    2017 WL 2062985 (S.D.N.Y. May 15, 2017) ........................................17

*In re Williams Co. ERISA Litig.*,
    231 F.R.D. 416 (N.D. Okla. 2005)..........................................................20

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................18

*In re WorldCom, Inc. ERISA Litig.*,
    2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004) ......................................20, 21

*In re WorldCom, Inc. ERISA Litig.*,
    2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .........................................11

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ........................................11

*Johnson v. Nextel Comms. Inc.*,
    780 F.3d 128 (2d Cir. 2015).....................................................................17

*Jones v. NovaStar Fin., Inc.*,
　　257 F.R.D. 181 (W.D. Mo. 2009) ......................................................................20

*Kanawi v. Bechtel Corp.*,
　　254 F.R.D. 102 (N.D. Cal. 2008) ......................................................................20

*Karg v. Transamerica Corp.*,
　　2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) .................................................20

*Karpik v. Huntington Bancshares, Inc.*,
　　2021 WL 757123 (S.D. Ohio Feb. 18, 2021) .......................................................9

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
　　2016 WL 6542707 (D. Conn. Nov. 3, 2016) .................................................9, 10

*Koch v. Dwyer*,
　　2001 WL 289972 (S.D.N.Y. Mar. 23, 2001) ....................................................21

*Koerner v. Copenhaver*,
　　2014 WL 5544051 (C.D. Ill. Nov. 3, 2014) ......................................................13

*Krueger v. Ameriprise Fin., Inc.*,
　　304 F.R.D. 559 (D. Minn. 2014) .................................................................19, 20

*Krueger v. Ameriprise Fin., Inc.*,
　　2015 WL 4246879 (D. Minn. July 13, 2015) ....................................................12

*Kruger v. Novant Health, Inc.*,
　　2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) .................................................13

*Lomeli v. Sec. & Inv. Co. Bahrain*,
　　546 Fed. App'x 37 (2d Cir. 2013) ....................................................................15

*Maywalt v. Parker & Parsley Petroleum Co.*,
　　67 F.3d 1072 (2d Cir. 1995) ..............................................................................6

*Melito v. American Eagle Outfitters, Inc.*,
　　2017 WL 3995619 (S.D.N.Y. Sept. 11, 2017) ..................................................15

*Moreno v. Deutsche Bank Americas Holding Corp.*,
　　2017 WL 3868803 (S.D.N.Y Sept. 5, 2017) ..................................3, 17, 18, 20

*Moreno v. Deutsche Bank Am. Holdings Corp.*,
　　No. 1:15-cv-09936, ECF No. 321 (S.D.N.Y. Aug. 14, 2018) ...........................10

*Moreno v. Deutsche Bank Americas Holding Corp.*,
  No. 1:15-cv-09936, ECF No. 335 (S.D.N.Y. Oct. 9, 2018).................................................3

*Pecou v. Bessemer Trust Company, et al*,
  No. 2:22-cv-00377-JXN-JSA (D.N.J. Jan. 26, 2022) ........................................................2

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985)..........................................................................................................15

*Price v. Eaton Vance Corp.*,
  No. 18-12098, ECF No. 32 (D. Mass. May 6, 2019)........................................................11

*Robinson v. Metro-North Commuter R.R.*,
  267 F.3d 147 (2d Cir. 2001)..............................................................................................17

*Rozo v. Principal Life Ins. Co.*,
  2021 WL 1837539 (S.D. Iowa Apr. 8, 2021) ...................................................................12

*Sacerdote v. New York Univ.*,
  2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)......................................................................20

*Sacerdote v. New York Univ.*,
  328 F. Supp. 3d 273 (S.D.N.Y. 2018)...............................................................................12

*Shanehchian v. Macy's, Inc.*,
  2011 WL 883659 (S.D. Ohio Mar. 10, 2011)..............................................................19, 20

*Sims v. BB&T Corp.*,
  2019 WL 1995314 (M.D.N.C. May 6, 2019) ....................................................................11

*Stanford v. Foamex L.P.*,
  263 F.R.D. 156 (E.D. Pa. 2009).........................................................................................20

*Stevens v. SEI Investments Co.*,
  No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019)....................................20

*Tibble v. Edison Int'l*,
  2017 WL 3523737 (C.D. Cal. Aug. 16, 2017)...................................................................12

*Toomey v. DeMoulas Super Market, Inc.*,
  No. 1:19-cv-11633, ECF No. 95 (D. Mass. Mar. 24, 2021) .............................................11

*Tracey v. MIT*,
  2018 WL 5114167 (D. Mass. Oct. 19, 2018).....................................................................20

*Tussey v. ABB, Inc.*,
    2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ...........................................................19, 20

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ........................................................................................12

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2017 WL 2655678 (C.D. Cal. June 15, 2017) ...........................................................3, 20

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ..................................................................3

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 8334858 (C.D. Cal. July 30, 2018) ...............................................................11

*Vellali v. Yale Univ.*,
    333 F.R.D. 10 (D. Conn. Sept. 24, 2019) .....................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)......................................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................................6, 9

*Wildman v. Am. Century Servs. LLC*,
    2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ...........................................................3, 20

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) .........................................................................12

**Rules, Regulations, and Statutes**

Fed. R. Civ. P. 23, Advisory Committee Note (1966).................................................... 20

Fed R. Civ. P. 23(a)(1)....................................................................................................... 16

Fed. R. Civ. P. 23(b)(1)...................................................................................................... 19

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 15

Fed. R. Civ. P. 23(e)(1)...................................................................................................... 15

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................. 7

Fed R. Civ. P. 23(e)(2)......................................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(A) ................................................................................ 8

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................ 9

Fed. R. Civ. P. 23(e)(2)(C) .............................................................................. 11

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................ 14

29 U.S.C. § 1104(a) ......................................................................................... 19

29 U.S.C. § 1109 .............................................................................................. 16

29 U.S.C. § 1132(a)(2) ..................................................................................... 16

29 U.S.C. § 1132(a)(3) ..................................................................................... 16

75 Fed. Reg. 33830 ............................................................................................ 5

**Secondary Authorities**

4 Newberg on Class Actions § 11:25 (4th ed. 2002) ....................................... 6

Restatement (Third) of Trusts, § 100 cmt. b(1) .............................................. 12

**INTRODUCTION**

Plaintiffs Jubril Pecou and Ashley Schiefer ("Named Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of their class action settlement with Bessemer Trust Company ("Bessemer") and the Profit Sharing Plan Committee of Bessemer Trust Company ("Committee") (collectively, "Defendants") (with Named Plaintiffs, "Parties") relating to the management of the Bessemer Trust Company 401(k) and Profit Sharing Plan ("Plan").[1]

Under the terms of the proposed Settlement, Bessemer will pay a Settlement Amount of $5 million into a common fund for the Settlement Class's benefit. This is a significant recovery for the Class, and it falls well within the range of negotiated settlements in similar ERISA cases. For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and it merits preliminary approval so that notice may be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced counsel with the assistance of a well-respected mediator, Robert A. Meyer;

- The settlement provides for significant monetary relief and an equitable method of distribution;

- The Settlement provides for automatic distribution of the settlement proceeds to the Plan accounts of Current Participants, and Former Participants who no longer have active Plan accounts will have the option to receive their distribution via rollover to another qualified retirement account or by check;

- The release is appropriately tailored to the claims that were asserted in the action;

- The proposed Settlement Class is consistent with the requirements of Rule 23;

---

[1] A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit A to the accompanying Declaration of Brock Specht ("*Specht Decl.*"). Unless otherwise specified herein, all capitalized terms have the meaning assigned to them in Section 1 of the Settlement Agreement.

- The proposed Class Notice provides fulsome information to Settlement Class members about the Settlement, and includes information on a toll-free phone line and a website where they can access additional information and submit any questions; and

- The Settlement provides Settlement Class members the opportunity to raise any objections they may have to the Settlement and to appear at the final approval hearing.

Accordingly, the Named Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving the proposed Class Notice and authorizing distribution of the Class Notice to the Settlement Class; (3) certifying the proposed Settlement Class; and (4) scheduling a final approval hearing. Although Defendants dispute the Named Plaintiffs' allegations and deny any and all liability for any alleged violations of ERISA or any other law, they do not oppose the relief sought in this motion.

## BACKGROUND

### I.    THE PLEADINGS AND MOTION TO DISMISS

On January 26, 2022, Plaintiff Jubril Pecou filed a Complaint in the District of New Jersey alleging that Defendants breached their ERISA fiduciary duties by, among other things, causing the Plan and its participants to invest in expensive and underperforming proprietary Old Westbury mutual funds. *See Pecou v. Bessemer Trust Company, et al*, No. 2:22-cv-00377-JXN-JSA (D.N.J. Jan. 26, 2022). Defendants subsequently requested that the matter be voluntarily dismissed and refiled in the Southern District of New York. Counsel for Plaintiff Pecou and the Defendants stipulated to a dismissal of that action without prejudice, and that the instant action in the Southern District of New York shall be treated as if it had been initiated on January 26, 2022. *See id. at ECF No. 4*. The claims asserted in Plaintiff Pecou's Complaint in this District are identical to the claims originally asserted in the District of New Jersey.

On August 26, 2022, the operative Amended Complaint was filed (*ECF No. 46*), adding Ms. Schiefer as an additional Plaintiff. Defendants moved to dismiss the Amended Complaint on September 23, 2022, and that motion was fully briefed and submitted on November 11, 2022.

## II.    MEDIATION AND SETTLEMENT

Prior to the close of briefing on the motion to dismiss, the Parties jointly requested that the Court stay any decision until after they had engaged in a private mediation. The Court agreed to this request, and on January 6, 2023, the Parties engaged in a full-day, in-person mediation before Mr. Meyer. *Specht Decl. ¶ 11*. After extensive arm's-length negotiations through Mr. Meyer, the Parties reached a settlement-in-principle, and then prepared the comprehensive Settlement Agreement that is the subject of this motion. *Id. ¶ 12*.

## III.    OVERVIEW OF SETTLEMENT TERMS

### A.    The Settlement Class

The Settlement applies to the following Settlement Class:

> All Participants in the Bessemer Trust Company 401(k) and Profit Sharing Plan from January 26, 2016 through the Effective Date of Settlement (the "Class Period"), except a Person who was a member of the Profit-Sharing Plan Committee of Bessemer Trust Company during the Class Period.

*Settlement ¶ 1.41*. This Settlement Class is consistent with certified classes in several similar ERISA suits.[2] Based on the information provided by Defendants, there are approximately 2,600 Settlement Class members. *Specht Decl. ¶ 3*.

---

[2] *See, e.g.*, *Wildman v. Am. Century Servs. LLC*, 2017 WL 6045487, at *7 (W.D. Mo. Dec. 6, 2017); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y Sept. 5, 2017) ("*Moreno I*"); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) ("*Urakhchin I*"); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 335 at ¶ 3 (S.D.N.Y. Oct. 9, 2018) ("*Moreno III*") (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *2, *7 (C.D. Cal. Feb. 6, 2018) ("*Urakhchin II*") (same).

### B.    Monetary Relief

Under the Settlement, Defendants will contribute a Settlement Amount of $5 million to a common Qualified Settlement Fund. *Settlement ¶¶ 1.40*, *8.1*. After accounting for any attorneys' fees and expenses, taxes and tax-related expenses, Settlement Administration Expenses, and Case Contribution Awards approved by the Court, the Net Settlement Fund will be distributed to eligible Settlement Class members in accordance with the proposed Plan of Allocation. *Id*. *¶¶ 1.25*, *9.3*, *11.2*.

The Plan of Allocation provides for the distribution of the Net Settlement Amount to Settlement Class members in proportion to each Settlement Class member's share of the injuries alleged in this matter. *See Specht Decl. ¶ 6*; *Ex. B to Specht Decl. ¶ 1.1*.

### C.    Release of Claims

In exchange for the relief provided by the Settlement, the Named Plaintiffs, the Plan and the Settlement Class will release Defendants and affiliated persons and entities ("Defendant Releasees") from those claims contemplated in the Settlement Agreement. *See Settlement ¶ 1.33*. The Named Plaintiffs' Released Claims do not include claims to enforce the Settlement Agreement. *Id. ¶ 1.34*.

### D.    Class Notice and Settlement Administration

Settlement Class members will receive notice of the settlement via email where possible, and via U.S. mail where no email address is available. *Id. ¶ 3.2.3*; *Ex. A to Proposed Preliminary Approval Order*. The Class Notice provides information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the Settlement; (4) Settlement Class members' right to object to the Settlement and the deadline for doing so; (5) the Class release; (6) the identity of Class Counsel and the amount of compensation

they will seek in connection with the Settlement; (7) the amount of the proposed Named Plaintiff Case Contribution Awards; (8) the date, time, and location of the final approval hearing; and (9) Settlement Class members' right to appear at the final approval hearing and object. *Ex. A to Proposed Preliminary Approval Order*.

To the extent that Settlement Class members would like more information, the Settlement Administrator will establish a Settlement Website on which it will post the Settlement Agreement, Class Notice, and relevant case documents, including the Amended Complaint and a copy of all court orders related to the Settlement. *Settlement ¶¶ 1.42, 3.2.4*. The Settlement Administrator will also establish a toll-free telephone line that will provide the option of speaking with a live operator if callers have questions. *Id. ¶ 1.42*

### E.      Attorneys' Fees and Administrative Expenses

The Settlement requires that Class Counsel file their Motion for Attorneys' Fees and Expenses at least 21 days before the deadline for objections to the proposed Settlement. *Id. ¶ 11.1*. Under the Settlement, the requested fees may not exceed one-third of the Settlement Amount. *Id.* In addition, the Settlement provides for the payment of Administration Expenses related to the Settlement, and for Case Contribution Awards of up to $7,500 per Named Plaintiff. *Id. ¶¶ 1.38, 9.2.2, 11.1*.

### F.      Review by Independent Fiduciary

Defendants will retain an Independent Fiduciary to review and authorize the Settlement on behalf of the Plan. *Id. ¶ 3.4; see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, *as amended*, 75 Fed. Reg. 33830. The Independent Fiduciary will issue its report at least 21 days prior to the deadline for filing the Final Approval Motion, so it may be considered by the Court. *Settlement ¶ 3.4*.

# ARGUMENT

## I.  STANDARD OF REVIEW

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). In the first step, the Court considers whether the settlement warrants preliminary approval, such that notice of the settlement may be sent to the class members.[3] In the second step, after notice of the proposed settlement has been issued and class members have had an opportunity to be heard, the Court considers whether the settlement warrants final court approval. *Id.*

The decision whether to approve a proposed class action settlement is a matter of judicial discretion. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (reviewing the district court's approval of a settlement for an abuse of discretion). But there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quotation omitted). As a result, "courts should give proper deference to the private consensual decisions of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quotations omitted).

---

[3] A motion for preliminary approval involves only an "initial evaluation" of the fairness of the proposed settlement. *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (quoting 4 NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002)). To grant preliminary approval, the Court need only find that there is "probable cause" to submit the settlement to class members and hold a full-scale hearing as to its fairness. *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

Under Rule 23(e)(1) as amended in 2018, courts are authorized to grant preliminary approval of a proposed settlement so long as the court will "likely be able to" grant final approval of the settlement and certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B); *In re GSE Bonds Antitrust Litig.*, 2019 WL 6842332, at *1 (S.D.N.Y. Dec. 16, 2019). As explained below, this standard is satisfied here.

## II. THE SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL

In order to approve a settlement under Rule 23(e)(2), the Court must consider four factors: (1) adequacy of representation; (2) existence of arm's-length negotiations; (3) adequacy of relief; and (4) equitableness of treatment of class members. Fed R. Civ. P. 23(e)(2); *see also In re GSE Bonds*, 2019 WL 6842332, at *1 (explaining that new Rule 23 factors "supplement rather than displace the[] '*Grinnell*' factors" previously applied in this circuit).[4] All four of these factors and the relevant *Grinnell* factors support preliminary approval of the Settlement.

### A. The Class is Adequately Represented

"Rule 23(e)(2)(A) requires a Court to find that 'the class representatives and class counsel have adequately represented the class' before preliminarily approving a settlement." *In re GSE*

---

[4] The nine *Grinnell* factors are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (citations omitted). Consistent with the intent of the 2018 amendments, only those *Grinnell* factors that are relevant to this Settlement are addressed here. *See* Fed. R. Civ. P. 23(e)(2) advisory committee note (2018) (observing that the new Rule 23(e) factors are intended to help the court and counsel focus on the most pertinent considerations: "This amendment . . . directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal.").

*Bonds*, 2019 WL 6842332, at *2 (quoting Fed. R. Civ. P. 23(e)(2)(A)). This adequacy standard is more than met here.

The Named Plaintiffs have adequately represented the Settlement Class. At the outset of their participation in the case, the Named Plaintiffs signed written acknowledgements of their duties as class representatives, and each of them have sought to fulfill those duties throughout the course of this case. *See Pecou Decl. ¶ 2 & Ex. A to Pecou Decl.*; *Schiefer Decl. ¶ 2 & Ex. A to Schiefer Decl.* Among other things, the Named Plaintiffs have reviewed the allegations in the Complaint and Amended Complaint; provided information and documents to counsel to assist in the investigation and prosecution of this action; made themselves available to answer questions from counsel and to stay informed on the status of the case; and conferred with counsel regarding the potential strengths and weaknesses of the claims asserted in this action and the potential risks and rewards of the Settlement compared to pursuing further litigation. *See Pecou Decl. ¶¶ 3-4 & Ex. A*; *Schiefer Decl. ¶¶ 3-4 & Ex. A*. The Named Plaintiffs fall within the proposed Settlement Class and are not aware of any conflicts between themselves and any other class members. *See Pecou Decl. ¶ 2*; *Schiefer Decl. ¶ 2*. Thus, the Named Plaintiffs are adequate class representatives, who have diligently pursued this action on behalf of the Class. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) ("Representation is 'adequate' where the class representatives have (1) an interest in vigorously pursuing the claims of the class and (2) no interests antagonistic to the interests of the other class members.").

The lawyers at Nichols Kaster are experienced ERISA litigators with a proven track record and are more than adequate to serve as Class Counsel. *See Specht Decl. ¶¶ 15-17*; *Ex. D to Specht Decl.* Indeed, Nichols Kaster "is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this."

*Karpik v. Huntington Bancshares, Inc.*, 2021 WL 757123, at *9 (S.D. Ohio Feb. 18, 2021). As detailed in the accompanying declaration, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently tried three ERISA class actions; (3) successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018); and (4) negotiated numerous ERISA class action settlements in addition to the present settlement. *See Specht Decl. ¶¶ 15-17*. Given this, Class Counsel are more than adequate to represent the proposed Settlement Class.

**B.    The Proposed Settlement was Negotiated at Arm's-Length**

The second factor examines whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A class action settlement "will enjoy a presumption of fairness" where the settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation[.]" *In re Excess Value Ins. Coverage Litig.*, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) (quotation omitted); *see also Wal-Mart*, 396 F.3d at 116. That is exactly the situation here. Class Counsel and Defense Counsel (Proskauer Rose LLP) are knowledgeable and experienced in complex ERISA class actions such as this. *See Specht Decl. ¶ 15-17*; *Ex. D to Specht Decl*. The settlement negotiations took place in the context of a full-day, arm's-length mediation session before an impartial mediator. *Specht Decl. ¶ 11*. The Parties were assisted in their negotiations by Mr. Meyer, an experienced and well-respected mediator. *See Specht Decl. ¶ 11*; *Ex. C to Specht Decl*. This factor also favors settlement. *In re GSE Bonds*, 2019 WL 6842332, at *2.

"[T]he stage of the proceedings and the amount of discovery completed" are also pertinent to the Court's review. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016) (quotation omitted). While this case settled prior to the Court's ruling

on Defendants' motion to dismiss the Amended Complaint, the following actions had already occurred: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for the Named Plaintiffs' claims prior to commencing this action, *Specht Decl. ¶ 9*; (2) the parties' legal positions were staked out in connection with the motion to dismiss, *id. ¶ 10*; and (3) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions leading up to and throughout the mediation process, *id. ¶¶ 15-17*. These circumstances favor approval of the Settlement. *See Kemp-DeLisser*, 2016 WL 6542707, at *8 ("Although formal discovery had yet to occur at the time the parties engaged in settlement negotiations, Class Counsel conducted extensive investigation into the facts, circumstances, and legal issues associated with the case before agreeing to the Settlement."); *Galdi Securities Corp. v. Propp*, 87 F.R.D. 6, 10 (S.D.N.Y. 1979) (approving settlement where "there was no formal discovery conducted, [but] there was substantial information available to plaintiff and its counsel for them to negotiate and enter into the proposed settlement.").[5]

### C. The Settlement Provides Significant Relief to Settlement Class Members That is Fair and Adequate Based on All Relevant Considerations

The parties' negotiations resulted in a Settlement that provides substantial relief to the Class. The negotiated monetary relief represents a significant portion of the alleged losses sustained by the Plan. At the time of mediation, the Named Plaintiffs' damages models estimated that the total losses ranged from approximately $19.5 million to $45.0 million under models

---

[5] Although this case was settled early, Class Counsel are no strangers to lengthy ERISA litigation. As noted above, Class Counsel have recently taken three ERISA class cases to trial, and litigated the *Deutsche Bank* ERISA action in this District to the very eve of trial before it was settled. *See Moreno v. Deutsche Bank Am. Holdings Corp.*, No. 1:15-cv-09936, ECF No. 321 at 5 (S.D.N.Y. Aug. 14, 2018) ("*Moreno II*") ("[T]he parties reached a settlement-in-principle on July 8, 2018, immediately preceding the scheduled start date of trial" (internal parentheses omitted)).

endorsed by the relevant caselaw and Restatement (Third) of Trusts. *Specht Decl.* ¶ *4*. Based on this estimate, the $5.0 million recovery represents approximately 11% to 26% of the total estimated losses. *Id*. This is one par with numerous other ERISA class action settlements that have been approved across the country.[6]

Moreover, each of the adequacy factors enumerated in Rule 23(e)(2)(C) support approval of the Settlement. These factors include:

(i)     The costs, risks, and delay of trial and appeal;
(ii)    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)   The terms of any proposed award of attorney's fees, including timing of payment; and
(iv)    Any agreement required to be identified under Rule 23(e)(3)[.]

Fed. R. Civ. P. 23(e)(2)(C). Each of these factors are discussed below.

### 1.     The Costs, Risks, and Delay of Further Litigation Were Significant

In the absence of a settlement, the Named Plaintiffs would have faced potential litigation risks. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (noting that there is a "general risk inherent in litigating complex claims such as these to their conclusion."); *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks."), *aff'd sub nom. In re PaineWebber Inc. Ltd. Partnerships*

---

[6] *See, e.g.*, *Toomey v. DeMoulas Super Market, Inc.*, No. 1:19-cv-11633, ECF No. 95 at 10 (D. Mass. Mar. 24, 2021), *approved* ECF No. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15-20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, ECF No. 211 (S.D.N.Y. May 20, 2020), *approved* 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, ECF No. 32 at 12 (D. Mass. May 6, 2019), *approved*, ECF No. 57 (D. Mass. Sept. 24, 2019) (23% of alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858, at *4 (C.D. Cal. July 30, 2018) (approximately 17.7% of losses under plaintiffs' highest model); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under plaintiffs' highest model).

*Litig.*, 117 F.3d 721 (2d Cir. 1997) ("Litigation inherently involves risks."). The Named Plaintiffs faced a risk of not prevailing on the motion to dismiss, having their claims dismissed on summary judgment, and, if the case proceeded to trial, Defendants still might have prevailed.[7] Finally, even if the Named Plaintiffs prevailed on liability, issues regarding proof of loss would have remained. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of losses in breach of fiduciary duty cases is "difficult"); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273, 280 (S.D.N.Y 2018) (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that . . . the Plans suffered losses as a result.").

None of this is to say the Named Plaintiffs lacked confidence in their claims. But there is no doubt that continuing the litigation would have resulted in complex and costly proceedings, and it would have delayed any relief to the Class, even if the Named Plaintiffs ultimately prevailed. ERISA 401(k) cases such as this "often lead[] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Indeed, these cases can extend for a decade before final resolution, sometimes going through multiple appeals. *See, e.g.*, *Tussey v. ABB, Inc.*, 850 F.3d 951, 954-56 (8th Cir. 2017) ("*Tussey II*") (recounting lengthy procedural history of case that was initially filed in 2006, and remanding to district court a second time); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed in 2007). The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERISA cases such as this are "particularly

---

[7] *See, e.g.*, *Rozo v. Principal Life Ins. Co.*, 2021 WL 1837539 (S.D. Iowa Apr. 8, 2021); *Sacerdote v. New York Univ.*, 328 F. Supp. 3d 273 (S.D.N.Y. 2018), *aff'd*, 9 F.4th 95 (2d Cir. 2021); *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019).

complex"); *Koerner v. Copenhaver*, 2014 WL 5544051, at *4 (C.D. Ill. Nov. 3, 2014) ("The facts giving rise to Plaintiffs' claims are complicated, require the elucidation of experts, and are far from certain."). Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for the Named Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("[S]ettlement of a 401(k) [ERISA] case benefits the employees and retirees in multiple ways").

### 2. The Proposed Method of Distributing Relief to the Class is Effective

The proposed method for distributing the Settlement proceeds is fair and reasonable. Current Participants will have their Plan accounts automatically credited with their *pro rata* share of the Settlement, and Former Participants will have the option to elect a rollover or to automatically receive a check with their share of the Settlement. *See supra* at 1; *Ex. B to Specht Decl. ¶¶ 2, 3*. For Former Participants whose *pro rata* share is calculated by the Settlement Administrator to be less than $5.00, their *pro rata* share shall be zero and reallocated amongst the other Settlement Class members. *Ex. B to Specht Decl. ¶ 1.1*; *see In re Glob. Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 463 (S.D.N.Y. 2004) (finding reasonable a de minimis threshold of $10 "in order to preserve the settlement fund from excessive and unnecessary expenses in the overall interests of the class as a whole."). This method of distribution is both effective and efficient. Any uncashed checks will revert to the Qualified Settlement Fund and to the extent any funds cannot be distributed to members of the Settlement Class, any remaining funds will be paid to the Plan to defray administrative fees and expenses of the Plan. *Ex. B to Specht Decl. ¶ 6.2*. No monies will revert to Defendants.

### 3. The Settlement Imposes a Reasonable Limitation on Attorneys' Fees

The Settlement terms relating to attorneys' fees and expenses are also fair and reasonable. The amount of any fee award is reserved to the Court in its discretion. *See Settlement ¶ 11.1*. But Class Counsel have agreed to limit their request to one-third of the settlement amount. *Id*. In ERISA breach-of-fiduciary-duty cases, courts in the Second Circuit "routinely approve fee awards of one-third of the common fund." *Cates v. Trustees of Columbia Univ. in City of New York*, 2021 WL 4847890, at *7 (S.D.N.Y. Oct. 18, 2021) (collecting cases). Moreover, with respect to the timing of payment, any attorneys' fees and expenses will be paid at the same time that funds to the class are distributed. *See Settlement ¶ 11.2.1*.

### 4. No Separate Agreements Bear on the Adequacy of Relief to the Class

As the Settlement states, "[t]his Settlement Agreement contains the entire agreement among the Parties relating to this Settlement.  It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet." *Settlement ¶ 14.12*. Accordingly, there are no separate agreements bearing on the adequacy of relief to the Class. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

### D. The Settlement Treats Settlement Class Members Equitably

Finally, the Settlement also treats Settlement Class members equitably. Under the proposed Plan of Allocation, each Settlement Class member will receive a *pro rata* portion of the settlement that is proportionate to their average balance in the funds that are challenged in this action. *See Ex. B. to Specht Decl. ¶ 1.1*. The same allocation formula is used to calculate settlement payments for all eligible Settlement Class members (both Current Participants and eligible Former Participants). *See Settlement ¶ 9.3*; *Ex. B to Specht Decl. ¶ 1.1*. Moreover, the allocation formula is carefully

tailored to the claims that were asserted in the case. *See supra* at 4; *Specht Decl. ¶ 6*. This further supports approval of the Settlement.

## III.    THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

The Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notices to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here. The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to the Settlement Class via email where possible, and U.S. mail where no email address is available. *Settlement ¶ 3.2.3*. This type of notice is presumptively reasonable. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Melito v. American Eagle Outfitters, Inc.*, 2017 WL 3995619, at *15 (S.D.N.Y. Sept. 11, 2017), *aff'd* 923 F.3d 85 (2d Cir. 2019) (finding reasonable and adequate class notices sent via email).

The content of the Class Notice is also reasonable. The Class Notice includes all relevant information, *see supra* at 4-5, and "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with proceedings." *Lomeli v. Sec. & Inv. Co. Bahrain*, 546 Fed. App'x 37, 41 (2d Cir. 2013) (quotation omitted); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). And the Class Notice will be supplemented through the Settlement Website and telephone support line. *See supra* at 5.

## IV.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

In addition to approving the Settlement and authorizing distribution of the Class Notice, this Court should certify the Settlement Class for settlement purposes. To certify the class, the

Named Plaintiffs must satisfy the requirements of Rule 23(a) and meet one of the prerequisites of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011). In the context of settlement, however, the Court need not inquire whether a trial of the action would be manageable on a class-wide basis because "the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). And "ERISA breach of fiduciary duty claims are particularly appropriate for class certification" under Rule 23 because these claims are "brought in a representative capacity on behalf of the plan as a whole." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010) (quotation omitted). That is precisely the nature of this action. *See ECF No. 46 ¶ 15* (citing 29 U.S.C. §§ 1109, 1132(a)(2) and (3)). And here, all the requirements of Rule 23(a) and 23(b)(1) are met. So, the Settlement Class should be certified.

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) of the Federal Rules of Civil Procedure sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 521 U.S. at 620. Each of these requirements is met here for settlement purposes.

Numerosity. Numerosity requires that the number of persons in the proposed class is so numerous that joinder of all class members would be impracticable. Fed R. Civ. P. 23(a)(1). This standard is clearly met for the Settlement Class, which includes approximately 2,600 Settlement Class members. *See supra* at 3. This far exceeds the threshold for numerosity. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

Commonality. Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1). This does not mean that all class members must make identical

claims and arguments, but only that "plaintiffs' grievances share a common question of law or of fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'" *Moreno I*, 2017 WL 3868803, at *4 (quoting *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)).

"'Typically, the question of defendants' liability for ERISA violations in common to all class members because a breach of fiduciary duty affects all participants and beneficiaries.'" *Id.* (quoting *In re J.P. Morgan Stable Value Fund ERISA Litig.*, 2017 WL 1273963, at *7 (S.D.N.Y. Mar. 31, 2017)). This case is no exception. This lawsuit raises numerous common questions, including: (1) whether Defendants are Plan fiduciaries; (2) whether Defendants breached their fiduciary duties by selecting and retaining proprietary Old Westbury mutual funds to serve as the Plan's only actively managed investments; (3) the proper form of equitable and injunctive relief; and (4) the proper calculation of monetary relief. Accordingly, commonality is satisfied.

Typicality. The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also In re Virtus Invest. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *3 (S.D.N.Y. May 15, 2017) ("the typicality requirement overlaps with that of commonality."). Typicality is satisfied when "'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *Moreno I*, 2017 WL 3868803, at *7 (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). This does not require that the situation of the named representative and class members be identical. *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006). Rather, it is sufficient that "the disputed issue of law or fact occupies essentially the same degree of centrality to the named

plaintiff's claim as to that of other members of the proposed class." *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (quotation omitted).

Here, the Named Plaintiffs' claims are consistent with those of other Settlement Class members who are participants in the Plan as they arise from the selection and retention of the Plan's proprietary Old Westbury mutual funds, their performance, and their investment expenses incurred by the Plan. The Named Plaintiffs do not have any unique claims against Defendants beyond those shared with the Settlement Class. Therefore, their claims are typical of the Settlement Class. *See Moreno I*, 2017 WL 3868803, at *7 (finding class representatives' claims regarding investment in proprietary mutual funds were typical of the class).

Adequacy: Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To satisfy this requirement: (1) class counsel must be qualified, experienced, and generally able to conduct the litigation; and (2) the representative plaintiffs' interests must not be antagonistic to those of the class. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both of those requirements are met for the reasons discussed above. *See supra* at 7-9.

**B.     The Proposed Class Satisfies Rules 23(b)(1)**

In addition to meeting the requirements of Rule 23(a), the proposed Class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Here, the proposed Settlement Class satisfies both prongs. *See, e.g.*, *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 576-78 (D. Minn. 2014) ("*Krueger I*") (certifying class under both prongs). "Because of ERISA's distinctive representative capacity and remedial provisions, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 453 (quotation omitted).[8]

### 1. Rule 23(b)(1)(A)

Certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a). Accordingly, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as . . . determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries." *Krueger I*, 304 F.R.D. at 577; *see also Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *9 (S.D. Ohio Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plan[] in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible.").

---

[8] *See also Hochstadt v. Boston Scientific Corp.*, 708 F. Supp. 2d 95, 105 (D. Mass. 2010) ("[I]n light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (quotation omitted); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007) ("*Tussey I*") ("Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1).").

### 2. Rule 23(b)(1)(B)

Likewise, because an adjudication on behalf of one participant of the Plan would effectively be dispositive of the claims of the other Settlement Class members, class certification is also appropriate under Rule 23(b)(1)(B). *See Moreno I*, 2017 WL 3868803, at *8. The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966). "[T]his case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plan[] and the thousands of participants in the Plan[]." *Shanehchian*, 2011 WL 883659, at *10. Numerous courts have granted certification under Rule 23(b)(1)(B) in similar cases.[9]

---

[9] *See, e.g.*, *Falberg v. Goldman Sachs Grp., Inc.*, 2022 WL 538146 (S.D.N.Y. Feb. 14, 2022); *Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020); *Vellali v. Yale Univ.*, 333 F.R.D. 10 (D. Conn. Sept. 24, 2019); *Stevens v. SEI Investments Co.*, No. 2:18-cv-04205-NIQA, ECF No. 40 (E.D. Pa. July 31, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cunningham v. Cornell Univ.*, 1:16-cv-6525, ECF No. 219 (S.D.N.Y. Jan. 22, 2019); *Cates v. The Trustees of Columbia Univ. in the City of New York et al*, 1:16-cv-06524, ECF No. 210 (S.D.N.Y. Nov. 13, 2018); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey v. MIT*, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Henderson v. Emory Univ.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Wildman*, 2017 WL 6045487; *Moreno I*, 2017 WL 3868803, at *8; *Urakhchin I*, 2017 WL 2655678, at *8; *Krueger I*, 304 F.R.D. at 577; *Hochstadt*, 708 F. Supp. 2d at 105; *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825-WGY, ECF No. 88 (D. Mass. Dec. 13, 2016) (text order); *Shanehchian*, 2011 WL 883659, at *10; *In re Beacon Assocs. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012); *In re Northrup Grumman Corp. ERISA Litig.*, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 174 (E.D. Pa. 2009); *In re Norte/Networks Corp. ERISA Litig.*, 2009 WL 3294827, at *15 (M.D. Tenn. 2009); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 193 (W.D. Mo. 2009); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008); *Tussey I*, 2007 WL 4289694; *In re Tyco, Int'l, Ltd. Multidistrict Litig.*, 2006 WL 2349338, at *7 (D.N.H. Aug. 15, 2006); *In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 425 (N.D. Okla. 2005); *In re*

## CONCLUSION

For the foregoing reasons, the Named Plaintiffs respectfully request that the Court (1) preliminarily approve the Parties' Class Action Settlement Agreement; (2) approve the proposed Class Notice and authorize distribution of the Class Notice to the proposed Settlement Class; (3) preliminarily certify the Settlement Class for settlement purposes; (4) schedule a final approval hearing; and (5) entering the accompanying Preliminarily Approval Order.

Respectfully Submitted,
Dated: March 10, 2023                              **NICHOLS KASTER, PLLP**

                                                   *s/ Brock J. Specht*
                                                   Brock J. Specht, (admitted *pro hac vice*)
                                                   Paul J. Lukas, (admitted *pro hac vice*)
                                                   Steven J. Eiden, (admitted *pro hac vice*)
                                                   **NICHOLS KASTER, PLLP**
                                                   4700 IDS Center
                                                   80 South Eighth Street
                                                   Minneapolis, MN 55402
                                                   Telephone: (612) 256-3200
                                                   Facsimile: (612) 338-4878
                                                   bspecht@nka.com
                                                   lukas@nka.com
                                                   seiden@nka.com

                                                   *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2023 a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated:  March 10, 2023                              *s/ Brock J. Specht*
                                                    Brock J. Specht

---

*WorldCom, Inc. ERISA Litig.*, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004); *Koch v. Dwyer*, 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001); *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).